United States District Court
Southern District of Texas
**ENTERED**
February 14, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| FRED  HOFFMAN, III, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:18-CV-328 |
| | § | |
| JEFFERY  RICHARDSON, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION
TO GRANT IN PART AND DENY IN PART DEFENDANT
RICHARDSON'S MOTION FOR SUMMARY JUDGMENT AND TO DENY
<u>PLAINTIFF'S MOTION SEEKING PRELIMINARY INJUNCTIVE RELIEF</u>**

Plaintiff Fred Hoffman is a Texas inmate appearing *pro se* and *in forma pauperis*. In this prisoner civil rights action, Plaintiff primarily alleges that Defendants acted with deliberate indifference to his serious seizure condition and by causing him sleep deprivation. Pending before the Court are the following motions: (1) Warden Jeffery Richardson's Motion for Summary Judgment (D.E. 48); and (2) Plaintiff's Motion for Emergency Temporary Restraining Order (TRO) and Preliminary Injunction (D.E. 51-1).

For the reasons stated herein, it is respectfully recommended that the Court **GRANT in part** and **DENY in part** Defendant Richardson's Motion for Summary Judgment.  It is respectfully recommended further that the Court **DENY** Plaintiff's motion seeking a TRO or preliminary injunctive relief.

## I.     JURISDICTION

The Court has federal question jurisdiction over this civil action pursuant to 28 U.S.C. § 1331.  This case was referred to the undersigned United States Magistrate Judge for case management and to furnish recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.     PROCEDURAL BACKGROUND

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID), and is presently housed at the McConnell Unit in Beeville, Texas.  The facts giving rise to Plaintiff's claims occurred in connection with Plaintiff's current assignment to the McConnell Unit.

On October 4, 2018, Plaintiff filed his original complaint, naming the following officials as defendants: (1) Corey Furr, Assistant Warden; (2) Felix Anazor, Correctional Officer; (3) Vichente Martinez, Correctional Officer; (4) Sergeant Doroteo Fonseca; and (5) Lorie Davis, TDCJ Director. Plaintiff alleged that Defendants acted with deliberate indifference to his serious seizure condition and by causing him sleep deprivation. Plaintiff further alleged that he had been subjected to retaliation.

Plaintiff sought declaratory and injunctive relief as follows: (1) the banning of all strobe flashlights; (2) the beams from regular flashlights be directed at the cell floor and not the offender; (3) the cessation of all methods of sleep deprivation during count times; (4) the cessation of bringing disciplinary cases for failing to wake up and participate in count times; and (5) the cessation of TDCJ staff making medical judgment in the absence of contacting the medical department. Plaintiff asked the Court to declare that Defendants

had violated Plaintiff's right not to be subject to retaliation. Plaintiff also sought to represent other similarly-situated inmates.

A *Spears*[1] was conducted on October 30, 2018, where Plaintiff was given an opportunity to explain his claims.  On December 13, 2018, the undersigned issued a Memorandum and Recommendation (M&R), recommending that: (1) Plaintiff's deliberate indifference claims against Assistant Warden Furr in his official capacity for injunctive relief be retained; (2) Plaintiff's request to proceed as a class action be denied; and (3) Plaintiff's remaining claims against all Defendants be dismissed for failure to state a claim and/or as frivolous. (D.E. 10).  The undersigned, therefore, ordered service of Plaintiff's complaint on Assistant Warden Furr.  (D.E. 11).  Senior District Judge Hilda G. Tagle subsequently adopted the M&R.  (D.E. 68).

On August 7, 2019, Assistant Warden Furr filed a Motion for Summary Judgment. (D.E. 48). Plaintiff has submitted his responses to the summary judgment motion.  (D.E. 65, 70).  Plaintiff has also filed a  Motion for TRO and Preliminary Injunction.  (D.E. 51-1).  He subsequently filed a motion to supplement his request for a TRO and preliminary injunction with additional facts and exhibits.[2]  (D.E. 56).  The undersigned has substituted Warden Jeffery Richardson in place of Assistant Warden Furr as the defendant in this case regarding Plaintiff's claims for injunctive relief.  (D.E. 55). Warden Richardson has filed a response to Plaintiff's motion for a TRO and preliminary injunction.  (D.E. 53).

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

[2]  In a separate Order, the undersigned granted Plaintiff's motion to supplement.

### III.    SUMMARY JUDGMENT EVIDENCE

Warden Richardson offers the following summary judgment evidence:

Exh. A:    TDCJ Affidavit from Plans & Operations regarding Official TDCJ Policy on Use of Strobe Capable Flashlights (D.E. 48-1).

Exh. B:    Relevant TDCJ Medical Records regarding Plaintiff from January 1, 2016-April 30, 2018 (D.E. 48-2, 48-3).

Exh. C:    Plaintiff's Medical Compliance Records from January 1, 2016 -April 30, 2018 (D.E. 48-4).

Exh. D:    Plaintiff's Current Restriction Records (D.E. 48-5).

Exh. E:    TDCJ Security Memorandum 01.03 (SM-01.03) Rev. 7, regarding Count Procedures (D.E. 48-6).

Exh. F:    TDCJ Security Memorandum 01.03 (SM-01.03) Rev. 8, regarding Count Procedures (D.E. 48-7).

Exh. G:    TDCJ Security Memorandum 01.03 (SM-01.03) Rev. 6, regarding Count Procedures (D.E. 48-8).

Exh. H:    Plaintiff's Relevant Grievance Records for the time period of May 1, 2017 to present (D.E. 48-9).

Exh. I:    McConnell Unit's Night/Early Morning Count Schedules for the period of May 1, 2017 to present and Plaintiff's TDCJ Classification Records (D.E. 48-10 through 48-14).

Plaintiff, in turn, attached the following summary judgment evidence to his responses:

Exh. A:    Grievance No. 2018062354, filed by inmate Alton Jordan (D.E. 65-1, pp. 1-5).

Exh. B:      Disciplinary Case against inmate Jordan (D.E. 65-1, pp. 6-7).

Exhs. C:     Inmate Jordan's disciplinary appeal (D.E. 65-1, pp. 8-12).

Exh. D:    Grievance No. 2018069004, filed by inmate Michael Garrett (65-1, pp. 13-17).

Exh. E:      Article from the Prison Legal News  (D.E. 65-1, pp. 18-21).

Exh. F:      Statement from inmate Garrett (D.E. 70-1, pp. 2-5).

Plaintiff has also filed his signed declaration opposing the summary judgment motion. (D.E. 66).

Lastly, Plaintiff's verified complaint, attachments thereto, and testimony at the *Spears* hearing also serve as competent summary judgment evidence.  *See Garrett v. Davis*, No. 2:14-CV-70, 2017 WL 1044969, at *3 (S.D. Tex. Mar. 20, 2017). Like other parts of the record, Plaintiff's verified complaint and *Spears*-hearing testimony must satisfy Federal Rule of Civil Procedure 56(c) in order to be considered at summary judgment. *See Mengele v. AT&T Servs. Inc.*,  No. 3:15-cv-3934, 2017 WL 3835871, at *3 (N.D. Tex. Aug. 9, 2017) ("[T]he verified complaint and sworn interrogatory answers of the *pro se* litigant can be considered as summary judgment evidence *to the extent that such pleadings comport with the requirements of current Rule 56(c)*.") (emphasis added) (citations omitted).

The undersigned, therefore, will not consider parts of Plaintiff's verified complaint or *Spears*-hearing testimony that are not made on personal knowledge or that would be

inadmissible in evidence.  *See* Fed. R. Civ. P. 56(c)(4).  Accordingly, the competent summary judgment evidence establishes the following:

## A.  Plaintiff's Evidence

### (1)  Verified Complaint and Spears Hearing Testimony

At the time of the *Spears* hearing, Plaintiff was 42 years old.  At eleven years old, Plaintiff received a serious blow to the head while snow skiing. Plaintiff was subsequently diagnosed with "Occipital Lobe seizures and also Temporal-Parietal-Occipital seizures." Plaintiff was diagnosed at age thirteen with Complex Partial Seizures after suffering from serious carbon monoxide poisoning, requiring him to be hospitalized for two weeks.

TDCJ recognizes that Plaintiff suffers from his seizure disorders, and Plaintiff receives medications to treat this condition.  In 2016, Plaintiff suffered a major seizure due to exposure to sunlight and heat.  During the time Plaintiff was hospitalized for this seizure, his legal materials and typewriter were damaged and/or destroyed. Because of this incident, Plaintiff refused to leave the prison and receive treatment with a neurologist. Since 2016, Plaintiff suffered one seizure which required hospitalization. Plaintiff estimates that he has about three seizures a month. Plaintiff acknowledges that McConnell Unit officials did not deny him medical attention for any of his seizures.

Plaintiff testified that the McConnell Unit has eight roster counts per day. During night-time hours, officers routinely wake up inmates for the required roster counts. Some officers use high-powered flashlights with strobe capability and shine them into the faces of the inmates to wake them up to participate in the roster counts. According to Plaintiff,

Officers Anazor and Martinez repeatedly shined their strobe-capable flashlights into his eyes as well as the eyes of other inmates known to have seizure disorders. These officers have either denied or ignored Plaintiff's request to discontinue this practice.

Plaintiff testified that he has suffered seizures as a result of the use of strobe-capable flashlights deployed by Officer Anazor and an unidentified officer, including one where he was taken to the medical department in May 2018.  Plaintiff had multiple conversations with Assistant Warden Furr where Warden Furr indicated he would intercede but ultimately failed to provide Plaintiff with any assistance to stop the officers' use of strobe-capable flashlights.

Practice Manager Tonya Lawson has advised unit staff on multiple occasions that strobe capable flashlights induce seizures and pose a significant health risk to inmates. Assistant Warden Furr has allegedly refused to act on this warning or to respond to Plaintiff's I-60 requests. Plaintiff maintains that TDCJ Director Lorie Davis issued an email to unit staff to discontinue the use of strobe flashlights but has failed to ensure the policy was actually enforced or otherwise enact a policy or procedure to prevent the use of strobe capable flashlights against seizure patients.

According to Plaintiff, the actions of Officers Anazor and Martinez made Plaintiff choose between the threat of a disciplinary case for not participating in roster counts and having interrupted sleep at night.

### (2)  *Plaintiff's Declaration*

Plaintiff states the following in his declaration:  Beginning at the age of 11, he was diagnosed with occipital lobe seizures, temporal-occipital seizures, and complex partial

seizures.  (D.E. 66, p. 2).  His seizures can be triggered by exposure to extreme hot and cold temperatures, exposure to direct sun light, exposure to direct light in the eyes, stress, sleep deprivation, and exposure to strobe lights.  (D.E. 66, p. 2).

Whenever Plaintiff has suffered a seizure, he generally received the following medical treatment at the McConnell Unit: (1) his blood pressure is checked; (2) he is required to provide a urine sample to check is medication usage; (3) his heart is checked while he lays down in a gurney; (4) he is returned to his cell with an appointment to see a medical provider the next day; and (5) if he has suffered a "break-through seizure," Plaintiff is scheduled to see a specialist or neurologist for further diagnosis.  (D.E. 66, p. 2).  Plaintiff, however, has refused his appointments to see a specialist because he is afraid he will be sent to another unit with his property arriving a month later.  (D.E. 66, p. 2).

Plaintiff suffered a severe seizure in May 2017 at the McConnell Unit.  (D.E. 66, p. 3). While he was taken to the hospital, Plaintiff's property was packed and stored by TDCJ officials.  Plaintiff's typewriter was later returned to him damaged beyond repair. (D.E. 66, p. 3).  Plaintiff, however, has been warned that, while he refuses to see a neurologist, one of his seizures could result in coma or death.  (D.E. 66, p. 3).

Prison officials are alleged to be aware of Plaintiff's medical condition, yet continue to use strobe-capable flashlights during nighttime counts.  (D.E. 66, p. 4). Plaintiff further states Prison officials are also aware that causing him sleep deprivation can cause him to suffer seizures.  (D.E. 66, p. 4).  On September 17, 2017, Plaintiff suffered a seizure due to exposure to heat and sleep deprivation.  (D.E. 66, p. 4).  On

September 21, 2017, Plaintiff suffered a seizure due to the use of a strobe capable flashlight during count.  (D.E. 66, p. 4).  Additionally, Officer Anazor has shined his strobe capable flashlight into Plaintiff's eyes on ten occasions between November 24, 2018, and June 3, 2019.  (D.E. 66, p. 4).   Plaintiff states that he has suffered over 18 seizures due to strobe capable flashlights, 27 seizures due to heat and direct sunlight, and six seizures due to sleep deprivation.  (D.E. 66, p. 5).  Plaintiff has taken a medication for seven years called Trazodone to aid in his sleep.  (D.E. 66, p. 5).

Plaintiff has witnessed prison officials trigger a seizure in inmate Garrett.  (D.E. 66, p. 4).  Plaintiff stated that TDCJ Director Lorie Davis had instituted a new policy through an Inter-Office Memo that bars the use of strobe capable flashlights.  (D.E. 66, pp. 5-6).  Plaintiff stated that Defendant Furr has shown a copy of this new policy to inmate Garrett.  (D.E. 66, p. 6).

### (3) Other Evidence

Plaintiff has submitted Grievance No. 2018062354, which consists of Step 1 and 2 grievances filed by inmate Alton Jordan.  (D.E. 65-1, pp. 1-5).  In these grievances, inmate Jordan complained about having his sleep interrupted on multiple occasions during the night of December 11, 2017, by prison officials shining a strobe capable flashlight in his face.  (D.E. 65-1, pp. 2-5).  In his Step 1 grievance, inmate Jordan indicated that Plaintiff had witnessed this incident.  (D.E. 65-1, p. 2).  Inmate Jordan's Step 1 and Step 2 grievances were denied.  (D.E. 65-1, pp. 3, 5).

Plaintiff also has submitted a copy of a disciplinary case brought against inmate Jordan, who was charged for failing to obey an order given on August 1, 2017 to come to

the cell door during a special cell count.  (D.E. 65-1, p. 7).  Inmate Jordan provided a

statement indicating that he did not come to the door because he was asleep.  (D.E. 65-1,

p. 7).  Inmate Jordan was found guilty of the charged offense.  (D.E. 65-1, p. 7).

Plaintiff has submitted Grievance No. 2018062562, in which inmate Jordan

appealed a disciplinary case brought in December 2017  for failing to awake for a count.

(D.E. 65-1, pp. 8-12).  Inmate Jordan's Step 1 and Step 2 grievances were each denied

with his guilty findings and punishment upheld.  (D.E. 65-1, pp. 10, 12).

Next, Plaintiff has submitted Grievance No. 2018069004, which consists of Step 1

and 2 grievances filed by inmate Garrett.  (D.E. 65-1, pp. 1-5).  Inmate Garrett, who also

suffers from seizures, complained about having strobe capable flashlights shined in his

face which led to him having multiple seizures.  (D.E. 65-1, pp. 13-17).  Inmate Garrett's

Step 1 and Step 2 grievances were each denied.  (D.E. 65-1, pp. 15, 17).

Plaintiff has submitted inmate Garrett's affidavit.  (D.E. 70-1).   Inmate Garrett

states that: (1) he and Plaintiff "are two of the most serious cases of seizure patients … on

the McConnell Unit"; (2) several  prison officials have purposely induced seizures and

sleep deprivation in inmate Garrett by shining strobe capable flashlights in his eyes; (3)

inmate Garrett has been brought to both the medical department at the McConnell Unit

and the hospital on numerous occasions as a result of his seizures; (4) inmate Garrett has

reviewed multiple medical studies and scientific fact sheets on sleep deprivation; and (5)

inmate Garrett has witnessed Plaintiff's legal materials, which have included numerous

exhibits and expert witness reports connected to this action, being confiscated by prison

officials.  (D.E. 70-1).  Inmate Garrett further states that he was shown an Inter-Office

Memo from Director Davis that sets forth a new policy barring the use of strobe light flashlights and instructing officers to point the flashlight beams of light at the floors only. (D.E. 70-1, p. 4).

Lastly, Plaintiff has submitted a published article in June 2019 from the Prison Legal News, entitled "California Jail Prisoners Claim Sleep Deprivation; Court Issues Injunction." (D.E. 65-1, pp. 20-21). The article referenced a federal case filed in the Northern District of California in which the district judge issued a preliminary injunction prohibiting the jail system from depriving prisoners of their constitutional right to sleep. (D.E. 65-1, pp. 20-21).

### B. Warden Richardson's Evidence

#### (1) Relevant TDCJ policies

The TDCJ does not have an official policy regarding the use of use of strobe capable flashlights during night count. (D.E. 48-1). Pursuant to SM-01.03, effective September 28, 2012, "'Bed book Count' is a physical count of offenders that requires a verbal response and positive identification of the offender using the offender's identification (ID) card, or temporary ID if waiting for an ID card." (D.E. 48-6, p. 2). SM-01.03 provides that counting correctional officer must "[v]erify they are counting a living, breathing offender, not an object" and shall "use flashlights to assist in conducting an accurate count at nighttime, if needed." (D.E. 48-6, p. 4). Further revisions to SM-01-03, effective September 15, 2015 and April 15, 2019, continued to allow a correctional officer to use "flashlights to assist in conducting an accurate count at nighttime, if needed." (D.E. 48-7, p. 4; D.E. 48-8, p. 5).

### (2) Plaintiff's Relevant Grievances and Informal Complaints

On September 22, 2017, Plaintiff submitted an I-60 informal complaint to Practice Manager Lawson, asking her why medical officials failed to confirm that he was a seizure patient.  (D.E. 48-9, pp. 16-17).  According to Plaintiff, he was refused treatment by medical and called a liar.  (D.E. 48-9, p. 16)  Practice Manager Lawson responded on September 29, 2017, indicating that the "last call" for Plaintiff occurred on September 7, 2017, and that "the disposition shows TDCJ was instructed to send [Plaintiff] to medical."  (D.E. 48-9, p. 16).

On September 23, 2017, Plaintiff submitted an I-60 informal complaint in which he asked Practice Manager Lawson whether a strobe capable flashlight shined into someone's eyes could induce a seizure.  (D.E. 48-9, pp. 14-15).  On September 29,2017, Practice Manager Lawson responded that "a strobe light can trigger a seizure" and that she will "address with rank."  (D.E. 48-9, p. 14).

In a Step 1 grievance dated October 13, 2017 (Grievance No. 2018029369), Plaintiff complained about the use of strobe flashlights during the late night/early morning hours which has resulted in sleep deprivation and the increase in risk of seizures for him and other inmates.  (D.E. 48-9, pp. 12-13).  Plaintiff wrote in his grievance that he has suffered from seizures on numerous occasions in his cell, that he has tried for over three years to stop officers from flashing their "strobe/flashlights" into Plaintiff's eyes, and that he had a seizure in his cell on September 21, 2017.  (D.E. 48-9, p. 12). In reviewing Plaintiff's Step 1 grievance, Assistant Warden Furr found that the investigations into Plaintiff's complaints "revealed that per Security Memorandum 01.03

Count Procedures for the accuracy of counts and to verify they are counting a living breathing offender, not an object officers shall use flashlights to assist in conducting an accurate count at night time." (D.E. 48-9, p. 13).

In his Step 2 Grievance filed on December 14, 2017, Plaintiff specially asserted that the strobe functionality on an officer's flashlight induced a seizure in another inmate. (D.E. 48-9, p. 10).  In response to Plaintiff's Step 2 grievance, the reviewing officer concluded that Plaintiff's complaint had been "brought to the attention of unit administration who will address accordingly." (D.E. 48-9, pp. 10-11).

In a Step 1 grievance dated December 22, 2017 (Grievance No. 2018064039), Plaintiff complained about the use of strobe capable flashlights by Officers Anazor and Martinez during the late night/early morning, which has resulted in sleep deprivation and the increase in risk of seizures. (D.E. 48-9, pp. 42-43). Warden Fernandez rejected this grievance, finding no staff misconduct since "Officer Martinez was conducting count and utilizing the flashlight to observe inside the cell. (D.E. 48-9, p. 43).

In his Step 2 grievance dated February 28, 2018, Plaintiff reiterated his complaints that the use of strobe capable flashlights shined into the eyes of offenders placed seizure patients in danger of suffering seizures as well as sleep deprivation.  (D.E. 48-9, p. 40). In response to Plaintiff's Step 2 grievance, the reviewing officer determined that staff had followed proper policies and procedures as set forth in  the TDCJ policy handbooks. (D.E. 48-9, p. 40-41).

### (4) Plaintiff's Relevant Medical Records

Warden Richardson has submitted extensive medical records regarding the care Plaintiff has received from January 1, 2016-April 30, 2018.  (D.E. 48-2).  Information contained in a "Texas Uniform Health Status Update," dated October 4, 2017 confirmed that Plaintiff suffers from epilepsy and recurrent seizures which were first observed on September 17, 2010.  (D.E. 48-2, p. 25).  From January 21, 2016, through April 5, 2018, clinical records reflect that Plaintiff regularly was prescribed Trazodone.  (D.E. 48-2, pp. 5, 28, 96, 104, 116, 126, 135, 144, 146, 150, 156, 162, 166, 169, 174, 182, 199, 223, 359, 502, 527).

While taking various medications for his seizure conditions, Plaintiff's medical records reveal that he has refused medications, evaluations, and procedures related to his seizure conditions on several dates, including the following: May 14, 2016, June 5, 2016, June10, 2016, June 24, 2016, July 5, 2016, August 7, 2016, August 8, 2016, April 10, 2017 June 11, 2017, and September 28, 2017.  (D.E. 48-2, p. 29, 32, 42, 53, 55, 58, 60, 63, 66, 76). Plaintiff was cautioned on many of these occasions that his seizure condition would worsen if he refused treatment.  (Id.).  Plaintiff also refused to attend "Directly Observed Therapy" on numerous occasions in 2016.  (D.E. 48-2, pp. 481-500).

On May 10, 2016, Plaintiff reported to medical officials at the McConnell Unit that he had suffered two seizures since his medications had been discontinued following an incident where certain medications were confiscated from his cell.  (D.E. 48-2, pp. 210, 213, 248).  In a clinical note dated June 9, 2016, Plaintiff reported having had one seizure since going on the medication Tegretol.  (D.E. 48-2, p. 199). A clinical note dated

May 15, 2017, reflects that Plaintiff was sent to the local emergency room for seizure activity occurring earlier.  (D.E. 48-2, p. 159).  Plaintiff reported that he suffers from seizures when the weather becomes hot and when he fails to stay cool by drinking plenty of water.  (D.E. 48-2, p. 159).

In a nursing clinical note dated September 28, 2017, Plaintiff reported suffering a seizure due to having missed his medications and complained about having to be taken to medical as he was fine.  (D.E. 48-2, p. 509).  In a clinical note dated September 29, 2017, Plaintiff reported that he was unable to exercise in the summer due to seizures caused by being in the heat and sun.  (D.E. 48-2, p. 96).

Plaintiff's medical records reflect that he has submitted numerous informal complaints from 2016 through 2018 in which he complained about his medical care for his chronic conditions, including his seizure and diabetic conditions.  (D.E. 48-2, pp. 583-600).  In complaints involving his seizure condition, Plaintiff cited the sun, heat, and changes to his medications as causes for his seizures.  (D.E. 48-2, pp. 583, 589, 597-99)

## IV.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52.

In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence or evaluate the credibility of witnesses. *Id.* Furthermore, affidavits or declarations "must be made on personal knowledge, [shall] set out facts that would be admissible in evidence, and [shall] show that the affiant or declarant is competent to testify to the matters stated." Fed. R. Civ. P. 56(c)(4); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine

factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." *Anderson*, 477 U.S. at 250-51.

## V.   DISCUSSION

### A.   Summary Judgment Motion (Deliberate Indifference)

#### (1)  General Legal Principles

"The Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (per curiam) (internal quotations omitted)). Prison officials are required to provide humane conditions of confinement and ensure that inmates receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Conditions that result in "unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Hudson v. McMillian*, 503 U.S. 1, 8-10 (1992).

"Deliberate indifference is an "extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). A constitutional violation under the Eighth Amendment occurs only when two requirements are met. "First, there is an objective requirement that the condition must be so serious as to

deprive prisoners of the minimal civilized measure of life's necessities, as when it denies the prisoner some basic human need." *Woods*, 51 F.3d at 581 (internal quotations and citation omitted). To prove a constitutional violation, an inmate need not show that a death or serious injury already has occurred, but rather that there is a "substantial risk of serious harm." *Ball v. LeBlanc*, 792 F.3d 584, 593 (5th Cir. 2015) (citing *Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004)).

"Second, under a subjective standard, [the court] must determine whether the prison official responsible was deliberately indifferent to inmate health and safety." *Woods*, 51 F.3d at 581 (internal quotations and citation omitted). Deliberate indifference is more than mere negligence. *Farmer*, 511 U.S. at 835. To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. *Id.* at 837.

### (2) Analysis of Plaintiff's Deliberate Indifference Claims

Several arguments have been advanced in the summary judgment motion that Assistant Warden Furr was not personally involved in the constitutional deprivations alleged by Plaintiff. (D.E. 48, pp. 5-9). In addition, arguments have been raised that Assistant Warden Furr is entitled to qualified immunity in his individual capacity, that Assistant Warden Furr is entitled to Eleventh Amendment immunity to the extent he is sued in his official capacity for damages, and that Plaintiff's claims for damages for

mental and emotional injuries are barred by the 42 U.S.C. § 1997e(e).  (D.E. 48, pp. 14-18).

It is important to note that Assistant Warden Furr was retained in his official capacity as the defendant best capable of implementing the injunctive relief requested by Plaintiff.  (D.E. 10, 68).  Thus, Assistant Warden Furr was not retained in his individual capacity based on his personal involvement in the alleged constitutional violations. Warden Richardson was then substituted in place of Assistant Warden Furr after the Court learned that Furr was no longer was employed at the McConnell Unit. Furthermore, Plaintiff does not seek damages in this case.  As such, it is respectfully recommended that Warden Richardson's summary judgment motion be denied on issues pertaining to personal involvement, qualified immunity, Eleventh Amendment immunity, and § 1997e(e).

At issue in this case is whether prison officials at the McConnell Unit acted with deliberate indifference to Plaintiff's serious medical needs by repeatedly shining strobe-capable flashlights in Plaintiff's face.  Warden Richardson contends in his summary judgment motion that no competent summary judgment evidence was presented to show that the use of strobe-capable flashlights caused Plaintiff to suffer a serious medical seizure or sleep deprivation or that Plaintiff was in imminent danger of suffering a seizure or sleep deprivation as a result of the use of such flashlights.  (D.E. 48, p. 11).   He further contends that no evidence has been presented to show that prison officials were aware of an excessive risk health and safety risk to Plaintiff and ignored that risk by

deploying strobe capable flashlights against Plaintiff during night counts.  (D.E. 48, p. 11).

Plaintiff responds that genuine issues of material facts exist as to whether prison officials at the McConnell Unit were aware of a serious risk of harm to Plaintiff through the use of strobe capable flashlights and disregarded that harm.  (D.E. 65, pp. 9-17). Plaintiff contends that McConnell Unit officials failed to follow the procedures set forth by Director Davis in the inter-office memo issued regarding the discontinued use of strobe capable flashlights and failed to train the officers with regard to the new procedures.  (D.E. 65, pp. 17-18).

### Seizures

The uncontroverted medical records, as well as Plaintiff's testimony, establish that he suffers from seizure disorders causing him to suffer on occasion occipital lobe seizures, temporal-occipital seizures, and complex partial seizures.  (D.E. 48-2, p. 25; D.E. 66, p. 2).  The objective medical evidence presented in this case further shows that Plaintiff has been treated for his seizures on numerous occasions between 2016 and 2018. (D.E. 48-2, pp. 96, 159, 199, 210, 213, 248, 509).

While Plaintiff states that he has suffered numerous seizures due to the use of strobe capable flashlights by prison officials during nighttime counts, the objective medical records provided in this case fail to reflect that he was specifically treated for seizures caused by the use of such flashlights. (*See* 48-2).  Rather, a review of these records reflects that Plaintiff received treatment for seizures caused by changes in his

medications or when the weather became hot and he became dehydrated.  (D.E. 48-2, pp. 96, 159, 199, 210, 213, 248, 509).

Despite the lack of medical evidence detailing whether any of Plaintiff's seizures were caused by the use of strobe capable flashlights, competent summary judgment evidence has been presented to show that strobe capable flashlights have been repeatedly deployed on Plaintiff and other inmates with a seizure condition.  Plaintiff testified at both his *Spears* hearing and in his declaration that: (1) Officers Anazor and Martinez repeatedly shined their strobe-capable flashlights into his eyes as well as the eyes of other inmates known to have seizure disorders; (2) these officers have ignored Plaintiff's request to discontinue this practice; (3) prison officials, while aware of Plaintiff's medical conditions, targeted him with strobe-capable flashlights to induce seizures in him and other offenders (D.E. 66, p. 4); (4) on September 21, 2017, Plaintiff suffered a seizure due to the use of a strobe capable flashlight during count; (5) in addition to the incidents described in his complaint, Officer Anazor has shined his strobe capable flashlight into Plaintiff's eyes on multiple occasions between November 24, 2018, and June 3, 2019; and (6) Plaintiff has suffered over 18 seizures due to strobe capable flashlights, 27 seizures due to heat and direct sunlight, and six seizures due to sleep deprivation.  (D.E. 66, pp. 4-5).

In a Step 1 grievance dated October 13, 2017 (Grievance No. 2018029369), Plaintiff complained about the use of strobe flashlights during night time counts and indicated that he has suffered a seizure in his cell on September 21, 2017 due to the use of a strobe capable flashlight.  (D.E. 48-9, p. 12).  Competent summary judgment has

been presented to demonstrate that the use of strobe capable flashlights has caused inmate Garrett to suffer seizures on many occasions and that inmate Garrett has required hospitalization. (D.E. 66, p. 6; D.E. 70-1, p. 4). In a Step 1 grievance filed by inmate Garrett, this offender complained that the strobe lights from an officer's flashlight caused him to suffer a seizure on January 7, 2018. (D.E. 65-1, p. 14).

The competent summary judgment evidence presented also shows that, on September 23, 2017, Plaintiff submitted an I-60 informal complaint in which he asked Practice Manager Lawson whether a strobe capable flashlight shined into someone's eyes could induce a seizure. (D.E. 48-9, pp. 14-15). In response to Plaintiff's I-60 complaint, Practice Manager Lawson reported on September 29,2017 that "a strobe light can trigger a seizure" and that she will "address with rank." (D.E. 48-9, p. 14). Plaintiff further states in his declaration that Practice Manager Lawson explained to Defendant Furr that strobe capable flashlights could trigger seizures and that inmate Garrett had been hospitalized after suffering from a strobe-light induced seizure. (D.E. 66, p. 6).

Warden Richardson has presented competent summary judgment evidence with regard to the applicable TDCJ policy on the use of flashlights. Pursuant to TDCJ policy SM-01.03 as revised during the relevant time, prison officials were authorized to use flashlights to assist in conducting accurate night-time counts so that the officer can verify there is a living and breathing offender in the cell. (D.E. 48-6, p. 4; D.E. 48-7, p. 4; D.E. 48-8, p. 5). Michelle Lewis, the custodian of TDCJ records, stated that the TDCJ does not have an official policy regarding the use or restriction on the use of strobe capable flashlights during night count. (D.E. 48-1).

Plaintiff has presented evidence that disputes Ms. Lewis's statement.   In his affidavit, inmate Garrett states that Assistant Warden Furr had shown him an Inter-Office Memo from Director Davis setting forth a new policy barring the use of strobe light flashlights and instructing officers to point the beams of light at the floors only.  (D.E. 70-1, p. 4).

When the competent summary evidence is examined in a light most favorable to Plaintiff, the undersigned finds that factual issues exist to preclude summary judgment as to whether prison officials at the McConnell Unit acted with deliberate indifference to Plaintiff's serious seizure condition.  Fact issues exist as to whether: (1) Plaintiff was subjected to a substantial risk of serious harm through the repeated use of strobe capable flashlights on him during nighttime counts; and (2) McConnell Unit officials were aware of a substantial risk of harm to Plaintiff  with regard to the use of strobe capable flashlights on him as an individual at high risk of suffering a seizure and yet disregarded that risk.

Based on the evidence presented before the Court, a jury could find that prison officials at the McConnell Unit acted with the requisite deliberate indifference to Plaintiff's serious seizure condition and that Warden Richardson is responsible as the individual capable of providing Plaintiff the injunctive relief he seeks in this action. Accordingly, the undersigned respectfully recommends that Warden Richardson's Motion for Summary Judgment (D.E. 48) be denied with respect to Plaintiff's deliberate indifference claim in connection with his seizure condition.

### Sleep Deprivation

Because "sleep undoubtedly counts as one of life's basic needs," any "[c]onditions designed to prevent sleep . . . might violate the Eighth Amendment." *Harper*, 174 F.3d at 720. *See also Walker v. Schult*, 717 F.3d 119, 126-28 (2d Cir. 2013) (concluding that sleep deprivation may deny prisoner of a minimal civilized measure of life's necessities). This Court has previously considered a civil rights action filed by inmate Garrett in which he claimed that the McConnell Unit's 24-hour building schedule failed to provide him with an opportunity to sleep continuously for six hours, in violation of his Eighth Amendment rights. *See Garrett v. Davis*, No. 2:13-CV-70, 2019 WL 1233675 (S.D. Tex. Mar. 18, 2019).

Inmate Garrett's case proceeded to a bench trial. The evidence presented at trial established that (1) Garrett suffered from hypertension, kidney disease, and a seizure disorder; (2) Plaintiff received medications for his conditions; (3) Plaintiff had neither complained of nor been diagnosed with a seizure disorder; and (4) Plaintiff never complained of insomnia. *Id.* at *2. No evidence was presented to show that Plaintiff's lack of sleep caused his medical complaints. *Id.* at *2.

Garrett presented at trial the expert testimony from Candice Alfano, a licensed clinical psychologist who is a University Professor and the director of the Sleep Anxiety Center in Houston, Texas. *Id.* at 2. Professor Alfano opined at trial that, in accordance with guidelines set forth by the American Academy of Sleep Medicine and the National Sleep Foundation, seven hours of sleep per night is necessary for optimal health. *Id.*

24 / 33

After considering Professor Alfano's testimony and the studies upon which she relied, District Judge Nelva Gonzalez Ramos determined that the sleep guidelines were "designed to promote an aspirational goal" and not "establish the standard for a deprivation of a life necessity." *Id.*   Judge Ramos concluded that conditions which are designed to promote safety and efficiency for housing large numbers of prisoners, but which limit or interrupt continuous hours of sleeping, do not necessarily violate the Eighth Amendment where sleep is not prohibited. *Id.* at 2.  Thus, upon consideration of Professor Alfano's testimony and the lack of evidence showing that insufficient sleep has caused his various medical complaints, Judge Ramos concluded that Garrett had failed to sustain his burden to show that his sleep schedule posed a substantial risk of serious harm. *Id.* at *3.

Turning to the instant case, Plaintiff testified at both his *Spears* hearing and in his declaration that: (1) prison officials effectively forced Plaintiff into sleep deprivation by using their strobe-capable flashlights during count times between 11:00 p.m. and 3:00 a.m.; (2) his seizures can be triggered by sleep deprivation; (3) prison officials are aware that causing him sleep deprivation can also cause him to suffer seizures; (4) on September 17, 2017, Plaintiff suffered a seizure due to exposure to heat and sleep deprivation; (5) Plaintiff states that he has suffered six seizures due to sleep deprivation; (6) Plaintiff has taken a medication for seven years called Trazodone to aid in his sleep. (D.E. 66, pp. 2-5).

Plaintiff's sleep deprivation claim is based on his complaints that prison officials repeatedly shine their strobe capable flashlights in his eyes while performing night count.

It is uncontroverted that Plaintiff has suffered sleep issues for many years based on his statement that he has taken Trazodone for seven years. While Plaintiff has been prescribed this sleep-aid medication, no objective medical evidence has been presented to show that Plaintiff's sleep issues were directly caused by the use of strobe capable flashlights. Contrary to Plaintiff's assertion about suffering six seizures due to sleep deprivation, the objective medical evidence does not suggest that his sleep issues were triggered by the use of strobe capable flashlights during night count or that his sleep issues have exacerbated any of his medical conditions.

This Court held in *Garrett* that aspiration goals of six or more continuous hours of sleep per night fail to establish the standard for the deprivation of one of life's basic needs. *See Garrett*, 2019 WL 1233675, at *2. Plaintiff has not offered any evidence in this case otherwise to show how many hours of sleep per night should be the standard for a deprivation of a life necessity. Thus, even when viewing the evidence in a light most favorable to Plaintiff, he has failed to establish a genuine issue of material fact with respect to whether sleep deprivation caused by the use of strobe capable flashlights posed a substantial risk of serious harm to him. For these reasons, the undersigned respectfully recommends that Warden Richardson's summary judgment motion (D.E. 48) be granted on the issue of sleep deprivation.

Even if the interruption of Plaintiff's continuous sleep caused by the use of strobe capable flashlights posed a substantial risk of serious harm, he has failed to demonstrate any fact issues as to the subjective prong of the deliberate indifference test. In an unpublished decision, the Fifth Circuit in *Walker v. Nunn*, 456 F. App'x 419 (5th Cir.

2011), considered the prisoner's Eighth Amendment claim of inadequate sleep due to the prison schedule, prison noise, and staff misconduct.  *Id.* at. 422.  The Fifth Circuit affirmed the dismissal of his sleep deprivation claims at the summary judgment stage.

First, the Fifth Circuit determined that "[t[he structure of the [24 hour] prison, hourly ingresses, and egresses, intercom announcements, and daily counts were reasonably related to legitimate penological interests."  *Id.* at 423.  The court further based its conclusion on: (1) the lack of evidence that the named defendants acted with deliberate indifference to the risk of inadequate sleep; and (2) the fact the defendant could not be held liable for the acts of the subordinate prison officials because the plaintiff had not demonstrated the elements of a failure-to-supervise claim.  *Id.* at 423-24.

Notwithstanding any interruption to his sleep due to being awaken by officers using strobe capable flashlights, Plaintiff has failed to establish a fact issue as to whether he was exposed to an excessive risk to his health, as discussed above, or that any McConnell Unit prison official was aware of that inference and had actually drawn that inference.  While Plaintiff states that his sleep was interrupted and that he suffered occasional seizures as a result of not sleeping, no evidence has been presented that McConnell Unit officials were aware of these sleep issues resulting directly from the use of strobe capable flashlights.

Accordingly, even when viewing the evidence in a light most favorable to Plaintiff, he has failed to establish a genuine issue of material fact with respect to whether prison officials at the McConnell Unit acted with deliberate indifference to his serious medical needs by depriving him of sleep through the use of strobe capable flashlights

during night-time counts. For this reason as well, the undersigned respectfully recommends that Warden Richardson's summary judgment motion (D.E. 48) be granted on this issue.[3]

### B.    Motion for TRO and Preliminary Injunction

Plaintiff moves the Court for a TRO or preliminary injunction in order to prevent his legal materials and exhibits related to litigation in this case or others filed in this Court from being destroyed by TDCJ staff.  (D.E. 51, p. 53).  Plaintiff claims that prison staff at the McConnell Unit are purposefully confiscating and threatening to destroy his legal papers in order to defeat his ability to litigate this case as well as other cases.   (D.E. 51, pp. 1-6).  Plaintiff subsequently filed supplemental materials where he stated that all of his legal materials had recently been confiscated.  (D.E. 56, p. 2).

In his response, Warden Richardson contends that Plaintiff's complaints about the confiscation of property and legal materials have no relation in law or in fact to his claims raised in this action.  (D.E. 53, p. 3).  Warden Richardson further contends that Plaintiff is otherwise not entitled to any preliminary injunctive relief.  (D.E. 53, pp. 4-10).

On October 7, 2019, the undersigned conducted a telephone hearing on Plaintiff's motion seeking preliminary injunctive relief.  At the hearing, Plaintiff informed the Court that over 400 pages consisting of medical studies relevant to this case had been taken from him.  (D.E. 57, pp. 22, 32).  Plaintiff also informed the Court that he had submitted a motion for designation of an expert report in April 2019 along with the expert's

---

[3] Warden Richardson contends that Plaintiff has failed to state a due process claim.  (D.E. 48, pp. 13-14).  However, a review of the filings in this case do not reflect that a due process claim has been raised or otherwise survived screening.  Plaintiff has not sought to amend his complaint and add a due process claim.  Accordingly, Warden Richardson's arguments as to this nonexistent claim are disregarded.

affidavit.  (D.E. 57, p. 25).   According to Plaintiff, the confiscated 400 pages of exhibits constituted the basis of Plaintiff's expert affidavit report.  (D.E. 57, p. 22).   Plaintiff informed the Court that it would be difficult to obtain another copy of his expert's affidavit as his expert witness had moved out of the country for the winter.  (D.E. 57, p. 23).

Court records reflect that Plaintiff has not filed a motion for designation of an expert witness.  Opposing counsel stated at the hearing that he did not receive a copy of such motion.  The deadline to designate an expert witness expired on May 6, 2019. (D.E. 18).  The undersigned instructed Plaintiff at the hearing that it was his responsibility, and not the Court or the opposing parties, to have an expert witness available to him at all times.   (D.E. 57, p. 27).   The undersigned, therefore, deferred ruling on whether Plaintiff's expert had been properly designated.

The undersigned clarified at the hearing that it would not consider Plaintiff's motion for preliminary injunctive relief to the extent that Plaintiff seeks to raise additional claims or is complaining about unrelated cases filed by him or other inmates. (D.E. 57, p. 13).   The undersigned ultimately directed that the following corrective actions be taken with respect to Plaintiff's ability to respond to Warden Richardson's pending summary judgment motion: (1) Plaintiff was granted thirty days to file his response to Warden Richardson's summary judgment motion along with an expert affidavit (D.E. 57, p. 30); (2) should Plaintiff not be able to obtain the expert affidavit, Plaintiff should do his best to summarize the contents of the expert affidavit (D.E. 57, pp. 30-31); (3) McConnell Unit officials were instructed to provide Plaintiff with an

opportunity to look through the documents confiscated from him to see which ones were relevant to this case (D.E. 57, pp. 51-54).

The undersigned now turns to consider whether Plaintiff is entitled to preliminary injunctive relief.  In order to obtain a preliminary injunction under Federal Rule of Civil Procedure 65, the movant must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) the injunction will not disserve the public interest. *Texans for Free Enterprise v. Texas Ethics Com'n*, 732 F.3d 535, 536-37 (5th Cir. 2013). Injunctive relief is an extraordinary remedy which requires the movant to unequivocally show the need for its issuance.  *Sepulvado v. Jindal,* 729 F.3d 413, 417 (5th Cir. 2013) (internal citations and quotations omitted).  Plaintiff must carry the burden as to all four elements before a preliminary injunction may be considered.  *Voting for America, Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013) (internal quotations and citations omitted).

Plaintiff's motion fails to warrant the extraordinary remedy of a preliminary injunction as he has failed to demonstrate a substantial threat of an irreparable injury. Several corrective actions were taken by the undersigned at the October 7, 2019 hearing to allow Plaintiff time to recover and review some of his confiscated documents and then to have additional time to submit his response to the pending summary judgment motion. Plaintiff then filed his detailed response, which includes several exhibits.

Plaintiff has provided no reason to justify his failure to stay in touch with his expert witness and obtain in a timely manner the expert affidavit in support of his

response to the summary judgment motion.  While claiming that his legal materials have been taken and generally claiming prejudice, Plaintiff has failed to show how any missing evidence was necessary to defeat summary judgment on the deliberate indifference claims raised in his case.  Indeed, based on factual issues created in part by the evidence submitted by Plaintiff, the undersigned has recommended that Plaintiff's deliberate indifference claim on the issue of seizures survive summary judgment.  In the absence of showing irreparable harm, Plaintiff's motion for preliminary injunctive relief should be denied.

## VI.    RECOMMENDATION.

For the foregoing reasons, **IT IS RESPECTFULLY RECOMMENDED** that Warden Richardson's Motion for Summary Judgment (D.E. 48) be **DENIED in part** and **GRANTED in part**.  The summary judgment motion should be **DENIED** with regard to issues raised therein pertaining to personal involvement in the constitutional deprivations, qualified immunity, Eleventh Amendment immunity, and § 1997e(e).  Based on disputed fact issues, the summary judgement motion should be **DENIED** as to Plaintiff's deliberate indifference claim against Warden Richardson in his official capacity for injunctive relief in connection with his seizure disorder.  The summary judgement motion should be **GRANTED** as to Plaintiff's deliberate indifference claim against Warden Richardson in his official capacity for injunctive relief in connection with his allegation of sleep deprivation.

**IT IS RESPECTFULLY RECOMMENDED FURTHER** that Plaintiff's

motion seeking a TRO or preliminary injunctive relief (D.E. 51-1) be **DENIED**.

Respectfully submitted this 13th day of February 2020.

Jason B. Libby
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).