United States District Court
Southern District of Texas
**ENTERED**
August 10, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| FRED  HOFFMAN, III, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:18-CV-328 |
| | § | |
| EVELYN  CASTRO, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Fred Hoffman is a Texas inmate appearing *pro se* and *in forma pauperis*. In this prisoner civil rights action, Plaintiff primarily alleges that prison officials acted with deliberate indifference to his serious seizure condition by exposing him to strobe-capable flashlights. Pending before the Court are the following motions: (1) Defendant Evelyn Castro's Motion to Dismiss (D.E. 112); (2) Defendant Castro's Supplemental Motion for Summary Judgment (D.E. 116); (3) Plaintiff's Motion to Reconsider Dismissal of the Director of the TDCJ (D.E. 130); (4) Plaintiff's Alternative Motion to Substitute Parties (D.E. 130); (5) Plaintiff's Motion to Permit Discovery Concerning Alleged Mootness (D.E. 130); and (6) Plaintiff's Motion for Leave to Amend Complaint (D.E. 130).

For the reasons stated herein, the undersigned respectfully recommends that the Court **DENY** Defendant Castro's dispositive motions.  The undersigned respectfully recommends further that the Court **GRANT** Plaintiff's Motion to Reconsider, **DENY**

Plaintiff's Alternative Motion to Substitute, and **DENY as moot** Plaintiff's remaining motions.

## I.     JURISDICTION

The Court has federal question jurisdiction over this civil action pursuant to 28 U.S.C. § 1331.  This case was referred to the undersigned United States Magistrate Judge for case management and to furnish a recommendation pursuant to 28 U.S.C. § 636.

## II.     PROCEDURAL BACKGROUND

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID), and is presently housed at the Bill Clements Unit in Amarillo, Texas.  The facts giving rise to Plaintiff's claims occurred in connection with Plaintiff's previous housing assignment to the McConnell Unit in Beeville, Texas.

On October 4, 2018, Plaintiff filed his original complaint, naming the following officials as defendants: (1) Corey Furr, Assistant Warden; (2) Felix Anazor, Correctional Officer; (3) Vichente Martinez, Correctional Officer; (4) Sergeant Doroteo Fonseca; and (5) Lorie Davis, TDCJ Director. Plaintiff alleged that Defendants acted with deliberate indifference to his serious seizure condition and by causing him sleep deprivation. Plaintiff further alleged that he had been subjected to retaliation.  Plaintiff seeks declaratory and injunctive relief.  With respect to his deliberate indifference claim regarding the use of strobe-capable flashlights, Plaintiff asks that the Court ban all such flashlights from use at the McConnell Unit and that the beams from regular flashlights be directed at the cell floor and not the offender.  (D.E. 1, pp. 15, 19).

A *Spears*[1] was conducted on October 30, 2018, where Plaintiff was given an opportunity to explain his claims.  On December 13, 2018, the undersigned issued a Memorandum and Recommendation (December 13, 2018 M&R), recommending that the Court retain only Plaintiff's deliberate indifference claims against Assistant Warden Furr in his official capacity for injunctive relief.  (D.E. 10, pp. 11, 15).   In determining that Assistant Warden Furr was the best person named by Plaintiff to implement the injunctive relief requested, the undersigned concluded that:

> Given the size of the TDCJ, it is more likely that each individual unit has day-to-day control over its operating policies. Plaintiff's allegations indicate that Director Davis already has directed McConnell Unit officials on the use of strobe-capable flashlights but that her directive is being ignored at the prison level. Therefore, for purposes of obtaining injunctive relief, Assistant Warden Furr is the individual most likely able to fashion the relief Plaintiff is seeking regarding the use of flashlights should he prevail on his claims.

(D.E. 10, p. 11).  The undersigned, therefore, ordered service of Plaintiff's complaint on Assistant Warden Furr.  (D.E. 11).  Senior United States District Judge Hilda G. Tagle subsequently adopted the December 13, 2018 M&R.  (D.E. 68).

On August 7, 2019, Assistant Warden Furr filed a Motion for Summary Judgment. (D.E. 48). Plaintiff submitted his responses to the summary judgment motion.  (D.E. 65, 70).  The undersigned subsequently substituted Warden Jeffery Richardson in place of Assistant Warden Furr as the defendant in this case regarding Plaintiff's claims for injunctive relief.  (D.E. 55).

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

On February 13, 2020, the undersigned issued a Memorandum and Recommendation (February 13, 2020 M&R), recommending that the Court grant in part and deny in part Warden Richardson's Motion for Summary Judgment. (D.E. 76). Specifically, the undersigned recommended: (1) the summary judgment motion be denied as to Plaintiff's deliberate indifference claim against Warden Richardson in his official capacity for injunctive relief in connection with his seizure disorder; and (2) the summary judgement motion be granted as to Plaintiff's deliberate indifference claim against Warden Richardson in his official capacity for injunctive relief in connection with his allegation of sleep deprivation. Judge Tagle subsequently adopted the February 13, 2020 M&R. (D.E. 89).

On June 16, 2020, the undersigned appointed Joel de la Garza to represent Plaintiff. (D.E. 95). During a status conference conducted on February 10, 2021, the undersigned learned that Plaintiff had been transferred from the McConnell Unit to the Bill Clements Unit, where he is currently housed. (*See* D.E. 116-1, p. 4).

On March 23, 2021, Warden Castro filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3). (D.E. 112). On April 5, 2021, Warden Castro filed a Supplemental Motion for Summary Judgment. (D.E. 116). Through appointed counsel, Plaintiff subsequently filed his response to Warden Castro's dispositive motions. (D.E. 124). In the same brief containing his response, Plaintiff has filed a Motion to Reconsider Dismissal of the Director of the TDCJ (D.E. 130), an alternative Motion to Substitute Parties (D.E. 130), a Motion to Permit Discovery Concerning Alleged Mootness (D.E. 130), and a Motion for Leave to Amend Complaint

(D.E. 130).[2]  Warden Castro and Plaintiff subsequently filed a reply (D.E. 125) and sur-reply (D.E. 129), respectively.

## III.   SUMMARY JUDGMENT EVIDENCE

Warden Castro offers the following summary judgment evidence:

Exh. A:       Plaintiff's Relevant Medical Records from August 1, 2020-February 11, 2021 (D.E. 117-1).

Exh. B:       Plaintiff's Relevant State Classification Committee Records related to Plaintiff's Transfer from the McConnell Unit to the Clements Unit (D.E. 116-1).

Plaintiff, in turn, attached the following summary judgment evidence to his responses:

Exh. A-1:      Plaintiff's Relevant *Spears* Hearing Testimony (D.E. 124-2).

Exh. A-2:      Plaintiff's Declaration (D.E. 124-3).

Exhs. A-3, A-4, A-5:      Relevant Excerpts from Plaintiff's Formal and Informal Grievances (D.E. 124-4, 124-5, 124-6).

Exh. A-6:      Plaintiff's Declaration filed in Case No. 2:18-CV-333 (D.E. 124-7).

Exh. A-7:      Plaintiff's Pleading filed in Case No. 2:18-CV-333 (D.E. 124-8).

Exh. A-1:      Plaintiff Grievance No. 2021075672 (D.E. 129-1, pp. 2-5).

---

[2] While filed in the same document containing his response to the dispositive motions (D.E. 124), Plaintiff's motions ultimately were docketed as Docket Entry 130.

Plaintiff's verified complaint and attachments thereto also serve as competent summary judgment evidence. *See Garrett v. Davis*, No. 2:14-CV-70, 2017 WL 1044969, at *3 (S.D. Tex. Mar. 20, 2017).

### A.  Plaintiff's Complaint and *Spears* Testimony

At eleven years old, Plaintiff received a serious blow to the head while snow skiing. Plaintiff was subsequently diagnosed with "Occipital Lobe seizures and also Temporal-Parietal-Occipital seizures." Plaintiff was diagnosed at age thirteen with Complex Partial Seizures after suffering from serious carbon monoxide poisoning, requiring him to be hospitalized for two weeks.

TDCJ recognizes that Plaintiff suffers from his seizure disorders, and Plaintiff receives medications to treat this condition.  In 2016, Plaintiff suffered a major seizure due to exposure to sunlight and heat.  Since 2016, Plaintiff suffered one seizure which required hospitalization.  Plaintiff estimates that he has about three seizures a month.

Plaintiff named former TDCJ Director Davis in his original complaint as a defendant.  Plaintiff alleged that Director Davis issued an email to unit staff to discontinue the use of strobe flashlights but then failed to ensure the policy was actually enforced or otherwise enact a policy or procedure to prevent the use of strobe capable flashlights against seizure patients. (D.E. 1, pp. 9, 13).

### B.  Plaintiff's Transfer to the Bill Clements Unit

In February 2020, following a Unit Classification Review, Plaintiff was determined not to be eligible to stay at the McConnell Unit due to his heat eligibility score and was transferred to the Bill Clements Unit.  (D.E. 116-1, pp. 3-4). At the time

Plaintiff was transferred, numerous medical and work restrictions had been placed on Plaintiff.  (D.E. 117-1, pp. 7, 12, 14-15).  Plaintiff was specifically restricted from working in direct sunlight and in temperature and humidity extremes.  (D.E. 117-1, pp. 7, 12, 14-15).

After Plaintiff's transfer to the Bill Clements Unit, he has continued to be exposed to the use of strobe-capable flashlights as well as regular flashlights which have been shined directly into his face on a daily basis.  (D.E. 124-3, p. 6).  In addition, Plaintiff has been subjected to constant illumination as cell lights have been left on for long periods of time forcing Plaintiff to cover his eyes with a sock to protect himself.  (D.E. 124-3, pp. 5-7).  On April 16, 2021, while Plaintiff was reporting misconduct to one correctional officer, another officer took out her flashlight and shined it in Plaintiff's face while repeatedly strobing it on and off.  (D.E. 124-3, p. 7).

Plaintiff has filed Step 1 and Step 2 grievances on these issues at the Bill Clements Unit.  (D.E. 124-3, p. 7).  Plaintiff has suffered multiple seizures at the Bill Clements Unit as a result of officer's use of flashlights and constant illumination in his cell.  (D.E. 124-3, pp. 7-8; D.E. 124-8, p. 33).

## IV.  LEGAL STANDARDS

Warden Castro has filed a Motion to Dismiss pursuant to Rules 12(b)(1) and 12(h)(3).  (D.E. 112).  Under Rule 12(b)(1), a party may challenge the subject matter jurisdiction of the district court to hear a case.  "In ruling on a motion to dismiss for lack of subject matter jurisdiction, courts, may evaluate (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint

supplemented by undisputed facts plus the court's resolution of disputed facts." *See Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001) (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).   A court must accept all factual allegations in the plaintiff's complaint as true.   *Id.*   The burden of establishing subject matter jurisdiction in federal court is on the party seeking to invoke it.   *Hartford Ins. Group v. Lou-Con Inc.*, 293 F.3d 908, 910 (5th Cir. 2002).   Accordingly, Plaintiff must prove that jurisdiction does in fact exist.   *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."   *Krim v. PCOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005) (citations omitted).   In considering a challenge to subject matter jurisdiction, the district court is "free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case."   *Id.*   "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."   Fed. R. Civ. P. 12(h)(3).

Warden Castro has also filed a Supplemental Motion for Summary Judgment. (D.E. 116).   Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a).   A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   The Court must examine "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence or evaluate the credibility of witnesses. *Id.* Furthermore, affidavits or declarations "must be made on personal knowledge, [shall] set out facts that would be admissible in evidence, and [shall] show that the affiant or declarant is competent to testify to the matters stated." Fed. R. Civ. P. 56(c)(4); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot

rest on the mere allegations of the pleadings.   Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 248.   "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451.   "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." *Anderson*, 477 U.S. at 250-51.

## V.   DISCUSSION

### A.   Mootness

#### *(1) General Legal Principles*

Article III of the Constitution limits the jurisdiction of federal courts to actual cases and controversies.   U.S. Const., Art. III, § 2.   This article requires parties seeking to invoke federal court jurisdiction to demonstrate they have a legally cognizable interest or personal stake in the outcome of a case.   *Genesis Healthcare v. Symczyk*, 569 U.S. 66, 71 (2013); *Payne v. Progressive Financial Services, Inc.*, 748 F.3d 605, 607 (5th Cir. 2014). A live controversy must exist at every stage of the litigation.   *Genesis*, 569 U.S. at 71.

A claim becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).   In other words, if a controversy between parties resolves to the point that they no longer qualify as "adverse parties with sufficient legal interests to maintain the litigation," a court is without power to entertain the particular claim.   *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 324 (5th Cir. 2009) (quoting *United States v. Lares-Meraz*, 452 F.3d 352, 351 (5th Cir. 2006) (per curiam)). Courts, therefore, lack

"constitutional jurisdiction" to resolve an issue where there is no Article III controversy. *See Goldin v. Bartholow*, 166 F.3d 710, 717 (5th Cir. 1999).

An exception to the mootness doctrine exists for a controversy that is "capable of repetition, yet evading review." *United States v. Sanchez–Gomez*, 138 S. Ct. 1532, 1540 (2018) (internal quotation marks and citation omitted).   This exception requires the following elements be met: "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the complaining party [will] be subject to the same action again."   *Kingdom Technolgies, Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016) (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)).   Thus, to fall under this exception, an inmate who has been transferred out of a particular facility where the complained-of conduct occurred "must show either a 'demonstrated probability' or a 'reasonable expectation' that he would be transferred back to [that facility] or released and reincarcerated there."   *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)).   *See also Sanchez-Gomez*, 138 S. Ct. at 1540 (requiring "reasonable expectation that the complaining party will be subjected to that same action again").

### (2) The Parties' Contentions and Analysis

In her dispositive motions, Warden Castro contends that Plaintiff's claims against her have been rendered moot in the wake of his transfer from the McConnell Unit to the Bill Clements Unit.   (D.E. 112, pp. 4-9; D.E. 116, pp. 6-11).   Plaintiff responds that his deliberate indifference claim has not been rendered moot because: (1) the conduct is ongoing as Plaintiff continues to be subjected to the use of strobe-capable flashlights at

the Bill Clements Unit; and (2) he may suffer collateral legal consequences in the form of having the dismissal of this action on mootness grounds count as a "strike" under the PLRA. (D.E. 124, pp. 4-8).

Where an inmate challenges conditions of confinement at a particular prison facility, the transfer of the inmate out of that facility generally renders moot any claims for injunctive or declaratory relief moot against defendants at that unit. *See Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (holding that plaintiff's transfer to a different prison facility rendered his claims for declaratory and injunctive relief moot); *Cooper v. Sheriff, Lubbock Cnty., Tex.*, 929 F.2d 1078, 1084 (5th Cir. 1991) (holding that inmate's transfer from county jail to state prison rendered moot his claims for injunctive relief); *Hernandez v. Garrison*, 916 F.2d 291, 293 (5th Cir. 1990) (per curiam) (holding that prisoner's Eighth Amendment claims, including allegations of overcrowding and denial of adequate medical treatment, were moot after he was transferred to another correctional facility and only remedy he sought was a transfer); *Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir. 1988) (holding that prisoners who were no longer in Retrieve Unit could not seek injunctive relief against conditions of confinement there); *Sias v. Jacobs*, No. 6:17cv413, 2017 WL 8229544, at *4 (E.D. Tex. Dec. 11, 2017) (holding that a prisoner's transfer from a prison unit renders moot his claims of deliberate indifference to his health when seeking injunctive relief against the defendants at that unit).

Plaintiff cites two cases to support his contention that his deliberate indifference claim has not been rendered moot due to the ongoing nature of misconduct against him. In *Davis v. New York*, 316 F.3d 93 (2d Cir. 2002), inmate Samuel Davis claimed that

various defendants violated his Eighth Amendment rights by exposing him to high levels of second-hand smoke at the Attica Correctional Facility (Attica). *Id.* at 94. The Second Circuit considered on appeal whether inmate Davis's claim for injunctive relief was moot after he had been transferred to a different housing block and Attica officials had implemented a new smoking policy. *Id.* at 99. The Second Circuit held that "Davis's claim for injunctive relief [was] not moot because Davis indicate[d] that his problems with second-hand smoke [were] ongoing" in the new cell block. *Id.* In addition, the Second Circuit explained that, "although defendants have implemented a new, restrictive policy," the policy was not enforced as inmates and officers continued to smoke in his cell block. *Id.*

Plaintiff next cites *Lehn v. Holmes*, 364 F.3d 862 (7th Cir. 2004). In *Lehn*, inmate Donald Lehn complained about policies implemented by the Illinois Department of Corrections (IDOC) that tolerated excessively high levels of environmental tobacco smoke (ETS) in the state's prisons. *Id.* at 864. At the time he filed his civil rights complaint, Lehn was incarcerated at the Big Muddy River Correctional Center. *Id.* Lehn named as defendants the Big Muddy River Warden as well as Donald Snyder, the IDOC's director. *Id.* at 371. While his complaint was pending, Lehn was transferred to the Graham Correctional Center. *Id.* at 864. The district court dismissed Lehn's complaint on the grounds that his ETS claims were rendered moot after he was transferred to a different prison facility or were unripe for adjudication. *Id.*

On appeal, the Seventh Circuit recognized that, by naming the IDOC director as a defendant, Lehn effectively "sought relief from a system-wide policy." *Id.* at 871. The

district court's dismissal of Lehn's ETS claim as moot, according to the Seventh Circuit, ignored "Lehn's efforts to challenge the policy at a statewide level." *Id.* The Seventh Court recognized that Lehn, who was transferred to a different facility with the same IDOC system, was not seeking injunctive relief for a condition specific to a particular prison, but rather was seeking relief from a condition that stems from a system-wide policy. *Id.* at 871-72. Thus, the Seventh Circuit reversed the district court on the issue of mootness. *Id.* at 872.

Following the reasoning set forth in *Davis* and *Lehn*, the undersigned concludes that Plaintiff's deliberate indifference claim regarding the use of strobe-capable flashlights has not been rendered moot by his transfer to the Bill Clements Unit. The competent summary judgment evidence shows that, despite his transfer to the Bill Clements Unit, Plaintiff's exposure to strobe-capable flashlights remains ongoing. Plaintiff has presented uncontroverted evidence to establish that: (1) the practice of using strobe-capable flashlights on him has continued at his current housing assignment, the Bill Clements Unit (D.E. 124-3, p. 5-7); and (2) he has suffered multiple seizures at the Bill Clements Unit as a result of officer's use of flashlights and constant illumination in his cell. (D.E. 124-3, pp. 7-8; D.E. 124-8, p. 33).

Similar to the inmate's ETS policy claim in *Lehn,* Plaintiff originally challenged TDCJ's policy in his complaint regarding the use of strobe-capable flashlights in prison units. Plaintiff named former TDCJ Director Davis in the complaint and alleged that Director Davis was responsible either for: (1) ensuring the enforcement of a *de facto* policy issued through an email to prison staff to cease the use of strobe-capable

flashlights; or (2) enacting a proper policy to prevent the use of strobe capable flashlights against seizure patients. (D.E. 1, pp. 9, 13).

Plaintiff's allegations, therefore, suggest that current TDCJ policy related to the use of strobe-capable flashlights have led to violations of his Eighth Amendment rights and caused him injury. Plaintiff seeks injunctive relief from ongoing conditions at prison units related to TDCJ policy and enforcement of same. While asking for strobe-capable flashlights to be banned at the McConnell Unit, Plaintiff further seeks injunctive relief not necessarily limited to one unit. Liberally construed, Plaintiff seeks injunctive relief related to policy matters such as: (1) requiring flashlights to be directed at the cell floor instead of at prisoners; and (2) cessation of officers acting in a way to cause an unreasonable risk of serious damage to seizure patients. (D.E. 1, p. 15).

When viewing the facts in a light most favorable to Plaintiff, the evidence presented shows that the use of strobe-light flashlights remains ongoing despite Plaintiff's transfer to a different unit. Because Plaintiff originally named the TDCJ Director and also challenged TDCJ policy in his original complaint regarding both the use of such flashlights and enforcement of any existing system-wide policy, the undersigned concludes that Plaintiff's deliberate indifference claims have not been rendered moot by his transfer from the McConnell Unit to the Bill Clements Unit. *Cf. Taylor v. Nelson*, No. W-19-CA-467, 2020 WL 7048605, at *3 (W.D. Tex. Dec. 1, 2020) (concluding that, upon her transfer from the TDCJ's Lane Murray Unit to the Hobby Unit, an inmate's claims regarding the confiscation of a hijab were rendered moot as she failed to make any general allegations challenging a TDCJ policy and instead focused her

claims against employees of the Lane Murray Unit). Accordingly, the undersigned respectfully recommends that Warden Castro's Motion to Dismiss pursuant to Rules 12(b)(1) and 12(h)(3) (D.E. 112) and Motion for Summary Judgment (D.E. 116) be denied on the issue of mootness.

### (3) Proper Defendant

Plaintiff moves the Court pursuant to Federal Rule of Civil Procedure 54(b) to reconsider its earlier decision to dismiss the TDCJ Director from this case. (D.E. 124, pp. 9-13). Warden Castro responds that Plaintiff's motion should be construed as seeking relief under either Federal Rule of Civil Procedure 59(e) or 60(b) and that such motion was not timely filed within ten days of the dismissal of the TDCJ Director. (D.E. 125, p 7).

Rules 59(e) and 60(b) provide a movant with procedural mechanisms to seek reconsideration from final judgments and orders. In this case, however, no final judgment has been entered with respect to this case as a whole or any individual party. Rather, on December 20, 2019, the Court adopted the undersigned's December 13, 2018 M&R only retaining Plaintiff's deliberate indifference claims only against Assistant Warden Furr and dismissing all other defendants, including former TDCJ Director Davis. (D.E. 68).

Because the December 20, 2019 Order granted only partial dismissal and was interlocutory, the Court must consider Plaintiff's motion for reconsideration under Rule 54(b). *See Davis v. Hinds County, Mississippi*, No. 3:16-CV-674, 2018 WL 3977972, at *1 (S.D. Miss. Aug. 20, 2018) (citing *Cabral v. Brennan*, 853 F.3d 763, 766 (5th Cir.

2017)).  Rule 54(b) provides that interlocutory orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  Fed. R. Civ. P. 54(b).  "'Interlocutory orders,' such as grants of partial [dismissal] ... 'are left within the plenary power of the court that rendered them to afford such relief from them as justice requires.'" *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 701 (5th Cir. 2014) (quoting *Zimzores v. Veterans Admin.*, 778 F.2d 264, 266 (5th Cir. 1985)).  This Court, therefore, retains discretion at any time to grant relief under Rule 54(b).  *See id.*

In the December 13, 2018 M&R, the undersigned recommended retaining Assistant Warden Furr from the McConnell Unit rather than the TDCJ Director Davis because: (1) Plaintiff's allegations indicated that McConnell Unit officials were ignoring Director Davis's directive set forth in an email to discontinue the use of strobe-capable flashlights; and (2) Assistant Warden Furr was the individual named by Plaintiff best capable of implementing any injunctive relief.  (D.E. 10, p. 11).  In adopting this recommendation, however, Judge Tagle explained that "[t]he equitable powers of trial courts are broad and flexible" and that, if necessary, "the best person to effect [an] injunction can be substituted in place of Furr."  (D.E. 68, pp. 2-3).

A reexamination of Plaintiff's complaint, as discussed above, reflects his intent to challenge the TDCJ's policy as failing either to address or enforce the discontinuation of strobe-capable flashlights on inmates with seizure conditions.  In light of Plaintiff's transfer to the Bill Clements Unit where the evidence shows he continues to be exposed to strobe-capable flashlights, it has become apparent that the TDCJ Director is now the

best person capable of implementing an injunction in this case. Accordingly, the undersigned respectfully recommends that Plaintiff Rule 54(b) motion for reconsideration (D.E. 130) be granted with regard to the dismissal of the TDCJ Director.

Lorie Davis was the TDCJ Director at the time she was dismissed from this case. Bobby Lumpkin is now the TDCJ Director. Pursuant to the Court's broad equitable powers as well as Federal Rule of Civil Procedure 25(d), the undersigned respectfully recommends that current TDCJ Director Lumpkin ultimately be substituted in place of Warden Castro in this action. Plaintiff has filed in the alternative a motion to substitute parties (D.E. 130), where he asks the Court to substitute the Bill Clements warden in place of Warden Castro. The undersigned respectfully recommends that Plaintiff's alternative motion to substitute parties (D.E. 130) be denied.

### B.    Eleventh Amendment Immunity

Warden Castro contends in her dispositive motions that she is entitled to Eleventh Amendment immunity from suit. (D.E. 112, pp. 9-11; D.E. 116, pp. 11-13). Plaintiff responds that he has offered evidence showing that the claimed Eighth Amendment violations regarding the use of strobe-capable flashlights are continuous and ongoing. (D.E. 124, p. 9).

"In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotations and modifications omitted). Thus, the *Ex parte*

*Young* exception applies when (1) a plaintiff has pled a valid claim for a violation of federal law against a state official responsible for enforcing the law at issue in that person's official capacity; (2) the claim seeks only prospective injunctive relief; and (3) the claim seeks to address a "continuing violation of federal law." *Walker v. Livingston*, 381 F. App'x 477, 478-79 (5th Cir. 2010) (per curiam) (citing *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 73 (1996)).

Plaintiff has pled Eighth Amendment violations regarding the use of strobe-capable flashlights against him in a way that has caused him to suffer seizures. Plaintiff also seeks prospective injunctive relief to effectively stop the use of such flashlights. Lastly, Plaintiff has presented evidence to show that any possible violations of his Eighth Amendment rights are ongoing at the Bill Clements Unit.

As discussed above, the undersigned has recommended that TDCJ Director Lumpkin be substituted in place of Warden Castro. Accordingly, because the *Ex parte Young* exception is applicable, the undersigned respectfully recommends that the dispositive motions (D.E. 112, 116) be denied to the extent that the proper defendant in this case may not claim an entitlement to Eleventh Amendment immunity.

## VI. RECOMMENDATION.

For the foregoing reasons, **IT IS RESPECTFULLY RECOMMENDED** that Warden Castro's Motion to Dismiss (D.E. 112) and Supplemental Motion for Summary Judgment (D.E. 116) be **DENIED** in their entirety.

**IT IS RESPECTFULLY RECOMMENDED** further that: (1) Plaintiff's Motion to Reconsider Dismissal of the Director of the TDCJ (D.E. 130) be **GRANTED** and that,

pursuant to the Court's broad equitable powers as well as Federal Rule of Civil Procedure 25(d), **TDCJ Director Bobby Lumpkin** be **SUBSTITUTED** in place of Warden Castro in this action; (2) Plaintiff's alternative motion to substitute the Bill Clements warden in place of Warden Castro (D.E. 130) be **DENIED**; and (3) Plaintiff's Motions to Permit Discovery Concerning Alleged Mootness (D.E. 130) and for Leave to Amend Complaint (D.E. 130) be **DENIED** as rendered moot by the recommendations to deny the dispositive motions and to substitute TDCJ Director Lumpkin in place of Warden Castro.

     Respectfully submitted this 10th day of August, 2021.

Jason B. Libby

United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).